IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JONATHAN D. GOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV72 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jonathan Gough ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on February 11, 2013, alleging a disability onset date of January 1, 2010, later amended to an onset date of January 17, 2013. (Tr. at 18-19, 177-90.)[1] His applications were denied initially (Tr. at 85-106) and upon reconsideration (Tr. at

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

107-32). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 161-62.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on September 1, 2015. (Tr. at 18.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through October 21, 2015, the date of the administrative decision. (Tr. at 30.) On November 29, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bilateral posttraumatic ankle arthropathy, post traumatic arthritis, status post open reduction internal fixation of right ankle (s/p, ORIF), right trimalleolar fracture, degenerative disc disease, left shoulder dislocation, [and] degenerative joint disease [of the] left AC joint.

(Tr. at 20-21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24-25.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following nonexertional limitations:

> [Plaintiff can] sit up to six hours and stand/walk up to two hours and must be allowed to alternate between sitting and standing up to two times each hour. He needs an assistive device to ambulate and has only occasional use of the bilateral lower extremities for pushing, pulling, and operating foot controls. He can frequently but not continuously stoop, crawl, crouch, kneel, and squat, but must avoid ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts. He can frequently but not continuously use the left upper extremity for pushing, pulling, [and] operating hand controls, as well as reaching in all directions including overhead. He is able to sustain attention and concentration for two hours at a time.

(Tr. at 25.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 28.) However, at step five, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 28-29.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 29-30.)

Plaintiff now raises three challenges to the ALJ's RFC assessment. First, Plaintiff argues that the RFC fails to properly account for Plaintiff's mild limitations in concentration, persistence, or pace, social functioning, and activities of daily living as required by the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Second, Plaintiff again relies on Mascio, along with Social Security Ruling (SSR) 96-7p, in challenging the ALJ's credibility assessment. Finally, Plaintiff contends that the ALJ erred at step five by relying on vocational expert testimony that appears to conflict with the Dictionary of Occupational Titles ("DOT") without first obtaining an explanation for the conflict. After a thorough review of the record, the Court finds that none of Plaintiff's contentions merit remand.

A.  Consideration of Mental Impairments

At step two of the sequential analysis, the ALJ analyzed Plaintiff's mental impairments of depression and anxiety using the four broad functional areas set out in the disability regulations for evaluating mental disorders, and concluded that Plaintiff had mild limitations in activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence, or pace. (Tr. at 23-24.) Plaintiff contends that these limitations should have been taken into account in setting the RFC, based on the Fourth Circuit's decision in Mascio. In Mascio, the Fourth Circuit held that if moderate limitations in concentration, persistence, or pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (internal citation omitted).

In the present case, unlike in Mascio, the ALJ found only mild, rather than moderate, restrictions in any area of functioning. (Tr. at 23-24.) More importantly, she made these findings in the course of her discussion at step two of the sequential analysis, supporting her conclusion that Plaintiff's mental impairments "do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 23.) See 20 C.F.R. §§ 404.1520a(d)(1), 415.920a(d)(1) (providing that if the degree of limitation in

7

the functional areas is only "none" or "mild," the impairment is not severe, unless the evidence otherwise indicates a more than minimal limitation in the ability to do basic work activities). This analysis differs from the typical Mascio scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from Plaintiff's mental impairment(s) meets or equals a listed impairment. The challenges in Mascio and its progeny therefore stem from the ALJ's failure, or alleged failure, to include limitations from the claimants' severe impairments in the RFC.

This distinction is significant. "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found that Plaintiff's mental impairments were nonsevere, meaning that they "do not cause more than minimal limitation in [his] ability to perform basic mental work activities." Plaintiff contends that the ALJ must nevertheless consider all impairments, whether severe or non-severe, in setting the RFC. However, the ALJ did consider Plaintiff's mental impairments and set out her reasoning at step two. Specifically, with respect to activities of daily living, the ALJ noted that despite his limitations, Plaintiff could "take care of his personal needs without assistance." (Tr. at 24.) With regard to social functioning, the ALJ found that despite his limitations, Plaintiff did not have any problems getting along with family, friends, and neighbors. (Tr. at 24.) Based on this analysis, the ALJ concluded that Plaintiff's depression and anxiety did not cause more

8

than minimal limitations in Plaintiff's ability to perform basic mental work activities. (Tr. at 23.) Thus, the ALJ adequately explained her subsequent omission of mental limitations from the RFC.

Moreover, as noted in Mascio, remand is "inappropriate" and "futile" in cases "where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). In the present case, Plaintiff never alleged any mental impairment, severe or otherwise, nor mentioned related limitations until questioned by the ALJ at the administrative hearing. At the hearing, Plaintiff alleged forgetfulness as a side effect of his pain medications (Tr. at 26, 70) and later had the following exchange with the ALJ:

> Q  Any difficulties with your mental health? Getting along with people, being in crowds, following instructions, staying focused to complete a task?
> A  I've been moody. I don't know if it's the medication or what, but I – I know I've been real moody and I do have – my mind wanders a lot, so I have trouble concentrating.
> Q  Are you taking any medication for your mental health?
> A  No, ma'am. . . . I've been depressed just going through all this.
> Q  And help me better understand some of your symptoms of depression. So you said sometimes you have difficulty focusing or concentrating, is that correct?
> A  Yes, ma'am.
> Q  Okay. Any other challenges for you?
> A  Mentally?
> Q  Yes, sir.
> A  No other – like I said, just depression. Kind of a useless feeling I guess you would say. Not feeling like doing anything.
> Q  And are you involved or have been involved in any mental health counseling or treatment?
> A  No, ma'am.

(Tr. at 71-72.) The ALJ noted the above testimony in her decision and, when assessing Plaintiff's RFC, included a limitation to sustaining attention and concentration for two hours

at a time. (Tr. at 25-27.) This restriction is directly related to Plaintiff's testimony regarding his trouble concentrating, and in adding this restriction, the ALJ gave Plaintiff every benefit of the doubt, as the record contains no treatment records or opinion evidence indicating <u>any</u> mental restrictions. In fact, when specifically asked about his functional abilities in his Adult Function Report, Plaintiff himself indicated only physical limitations and denied any limitations in memory, completing tasks, concentration, understanding, following instructions, or getting along with others. (Tr. at 226-27.) Although Plaintiff did allege difficulties in his activities of daily living, he based these allegations on purely physical limitations. (Tr. at 221-25.) Overall, nothing, including Plaintiff's own brief, indicates that Plaintiff's mild limitations at step two of the sequential analysis impacted his ability to perform basic work activities, let alone merited any further RFC restrictions. Accordingly, the Court finds no basis for remand.

B.     Credibility

Plaintiff next contends that the ALJ erred by determining his RFC before assessing his credibility, as specifically prohibited in <u>Mascio</u>, 780 F.3d at 639. Notably, in <u>Mascio</u>, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." <u>Id.</u> (citation omitted). Here, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 27.) Unlike the language in <u>Mascio</u>, this boilerplate does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

Mascio further explains that, even where an ALJ makes a "backwards" credibility determination, "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." Id. In that case, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and related her reasons for discounting the severity and limiting effects of Plaintiff's impairments based on the record as a whole in light of the relevant regulatory factors. (Tr. at 27-28.) Under the applicable regulatory guidance, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." Social Security Ruling 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96–7p"); see also 20 C.F.R. § 404.1529.[4] Toward this end, the Fourth Circuit in Craig described the two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id.

---

[4] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case on April 2, 2015 predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.). The Court therefore considers Plaintiff's claims under SSR 96-7p applicable at the time of the ALJ's decision.

at 594 (citing 20 C.F.R. §§ 404.1529(b) & 416.929(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595; see also Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (similarly setting out the two-part test).

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 27.) Therefore, Plaintiff's credibility challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. §§ 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical

13

findings." Lewis, 858 F.3d at 866. However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other objective evidence are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also Gowans v. Astrue, Civil No. SKG-06-2817, 2008 WL 179479, at *11 (D. Md. Jan 17, 2008) ("[E]ven though plaintiff's subjective complaints may demonstrate the requisite intensity and severity at step two, if there is significant evidence that contradicts his subjective complaints, the ALJ may, indeed must, consider that evidence in conjunction with the subjective evidence."); McLamb v. Astrue, No. 5:08-CV-305-FL, 2009 WL 2046062, at *9 (E.D.N.C. July 14, 2009); Wetmore v. Astrue, No. 5:09-CV-38, 2009 WL 6449319, at *22 (N.D. W. Va. Oct. 26, 2009).

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence contrary to Plaintiff's claims in conjunction with the subjective evidence. In particular, the

ALJ relied on the findings of the State agency medical consultant, Dr. Stephen Levin, who opined that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds, could stand and/or walk for a total of two hours in an eight hour day, could sit for six hours in an eight hour day, and had further limitations in pushing and/or pulling with his left lower extremity, climbing, balancing, and left overhead reaching. (Tr. at 27, 126-27.) Dr. Levin also opined that Plaintiff's use of a "cane was not required for minimal ambulation and used only for pain." (Tr. at 27, 125.)

Although the ALJ gave substantial weight to Dr. Levin's opinion, he ultimately, and explicitly, included additional limitations in the RFC based solely on Plaintiff's testimony. (Tr. at 27-28.) These included the use of an assistive device for ambulation, "only occasional use of the bilateral lower extremities for pushing, pulling[,] and operative foot controls," frequent, but not continuous stooping, crawling, crouching, kneeling, and squatting, and no unprotected heights or dangerous machinery. (Tr. at 28.) In fact, it appears that the only testimony discredited by the ALJ was Plaintiff's blanket allegation "that he would not be able to meet the basic demands of regular work on a sustained basis." (Tr. at 27.) In making this determination, the ALJ found that the objective medical evidence failed to support this assertion. Significantly, none of Plaintiff's treating physicians imposed any functional limitations whatsoever. (Tr. at 27.) Moreover, as noted by the ALJ, none of Plaintiff's treating physicians indicated that Plaintiff was disabled or unable to work. (Tr. at 27.) In addition, the ALJ noted that Plaintiff's treatment notes reveal that Plaintiff managed his pain with medications and declined steroid injections and other further treatment options. (Tr. at 22-23, 28, 400-02, 405-06, 420-21.) Dr. Larry Gish, who performed a consultative examination

15

on March 20, 2013, just two months after Plaintiff's right ankle surgery, opined that Plaintiff could not return to his past work putting up stucco because he was still using crutches and "[h]is job requires standing on his feet for a long period of time and climbing ladders which obviously he could not do at this time." (Tr. at 21-22, 27, 395-97.) However, the ALJ gave no weight to Dr. Gish's opinion because it was "based only on a snapshot" of Plaintiff's functioning, and by the next month, when Plaintiff returned to his orthopaedic surgeon, Dr. Karl Bolstad, for a recheck, he had transitioned from crutches to a cane. (Tr. at 27, 397, 22, 402.) Notably, Plaintiff does not challenge the ALJ's assignment of no weight to Dr. Gish's opinion, nor does he suggest any functional limitations beyond those included in the ALJ's RFC assessment. His sole argument is that the ALJ failed to "'build an accurate and logical bridge from the evidence to h[er] conclusion'" that Plaintiff's testimony was not credible. (Pl.'s Br. at 22) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). A plain reading of the administrative decision belies this assertion. As explained above, the ALJ largely incorporated Plaintiff's testimony in assessing his RFC, and discredited that testimony only to the extent Plaintiff alleged that he was precluded from all basic work activity. In making both her credibility and related RFC findings, the ALJ also expressly relied on the uncontested, objective medical evidence. As such, the ALJ provided legally sufficient reasons for finding Plaintiff's allegations of total disability less than credible. Plaintiff has not shown how this credibility analysis was improper or how the ALJ's credibility determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by

substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for her credibility determination, and supported that explanation with substantial evidence.

C. DOT Conflict

Finally, Plaintiff challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified

jobs. In particular, Plaintiff challenges the vocational expert's testimony that the jobs she identified could accommodate (1) alternating between sitting and standing and (2) use of an assistive device to ambulate. However, the ALJ questioned the vocational expert regarding conflicts and whether her testimony was consistent with the DOT, and the vocational expert addressed both of these issues and specifically testified that the DOT "doesn't delve into issues of postural activities such as sitting and standing and the need to alternate or using the assistive devices. So I used my own experience and research as well as training to answer those questions." (Tr. at 82.) Plaintiff's counsel then sought – and received – further clarification regarding the impact of Plaintiff's specific limitations on all three jobs identified at step five:

> Q   Ms. Mooney, since the claimant is in under the hypothetical is alternating sitting and standing two times an hour and needs an assistive device, for whatever period of time that turns into that he's on his feet with only one hand available to work, can he do these jobs – during that portion of the job?
> A.   Well, looking at the jobs that I've seen, I think so, yes, because I mean a person can take money at a change booth or at a pay booth while seated or standing and if the person could lean, you know, while doing this and use one hand. Also – let's see, yeah, the storage facility, yes. Storage facility rental manager, yes. That could – could be done. What was the other one I gave?
> Q   Small parts assembler.
> A   Small parts – well, generally that's done seated. People don't really stand up to do any portion of the work. So the ambulation would just be to get to the work station.

(Tr. at 83.) Given all of this testimony, the ALJ then specifically addressed the issue in her decision by noting the potential conflict particularly as to the sit/stand option, by finding that "there is a reasonable explanation for the discrepancy" based on the Vocational Expert's testimony, and by concluding that "the vocational expert's testimony regarding the sit/stand option is sufficient evidence to establish a significant number of jobs that the claimant was able to perform since it was based on her own experience and observation." (Tr. at 29.) Thus,

the issue was identified and the ALJ received testimony from the Vocational Expert explaining the potential conflict. The ALJ then explicitly determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. The apparent conflict was thus addressed and resolved to the extent required by Pearson, and the Vocational Expert's testimony provides substantial evidence supporting the ALJ's conclusion.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 8th day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge